UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

JESUS GUILLEN                                    CIVIL ACTION NO. 1:26-0582

                                                 SECTION P

VS.

                                                 JUDGE JERRY EDWARDS, JR.

U.S. DEPT. OF HOMELAND                           MAG. JUDGE KAYLA D. MCCLUSKY
SECURITY, ET AL.

REPORT AND RECOMMENDATION

Petitioner Jesus Guillen,[1] a detainee in the custody of the Department of Homeland

Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions

the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2]  Respondents oppose the petition.

[doc. # 9].  For reasons below, the Court should deny the petition.

Background

Petitioner is a citizen of Cuba.  [doc. # 1, p. 1].

On July 1, 2007, DHS released Petitioner on parole.  [doc. # 1, p. 5].

On May 4, 2017, "Respondents commenced removal proceedings against Petitioner."

[doc. # 1, p. 5].  On "May 7, 2017, Petitioner was taken into ICE custody and placed in removal

proceedings."  [doc. # 9, p. 6].  On June 1, 2017, an immigration judge ordered Petitioner

---

[1] Petitioner's "A-Number" is 094-920-379.

[2] This matter has been referred to the undersigned for review, report, and recommendation under
28 U.S.C. § 636, and the standing orders of the Court.

removed from the United States to Cuba.  [doc. #s 1, p. 1; 1-1, p 3].  Petitioner did not appeal. [doc. # 9, p. 6].  Petitioner states: "After his removal order, [DHS] was unable to remove Petitioner from the United States."  [doc. # 1, p. 6].  On September 1, 2017, "Upon not being able to remove Petitioner, ICE released Petitioner."  [doc. #s 1, p. 6; 9, p. 6].

"On July 24, 2025, Petitioner was detained during an apparent ICE raid of his work place."  [doc. # 1, p. 2].  "A records check revealed that the Petitioner had a final order of removal and was brought into ICE custody."  [doc. # 9, p. 6].

"On November 10, 2025, the Removal Division of ERO Headquarters determined that the Petitioner could be removed to Mexico.  ERO submitted a seat request and transfer for Petitioner's removal.  Then on November 24, 2025, the Petitioner claimed fear of removed [sic] to Mexico.  USCIS conducted an asylum interview on December 2, 2025, where the Petitioner received a negative finding of credible fear from the asylum officer pursuant to his removal to Mexico.  Next, Petitioner refused to sign his travel documents and stated he refused to be removed to Mexico and copy [sic] of the documents were [sic] uploaded to DHS databases." [doc. # 9, p. 6 (internal citations omitted)].

"[O]n December 17, 2025, the Petitioner failed to comply with his removal to Cuba by refusing to board the DHS bus.  ERO Officers advised Petitioner of his rights from Form I-2293F 4 (Warning for Failure to Depart), but Petitioner continued to refuse compliance with his removal from the United States.  Then on March 23, 2026, Petitioner failed to comply a second time with ERO with his removal flight to Cuba.  Next, on March 30, 2026, Petitioner failed to comply with ERO for the third time regarding his removal flight to Cuba.  Subsequently, on April 6, 2026, Petitioner was removed from the Flight Manifest #7426864 pending his repatriation to Cuba inquiry.  By May 4, 2026, Albuquerque ERO was informed by the Cuban

government that the Petitioner was denied repatriation to Cuban [sic].  On April 2, 2026, ERO Headquarters was advised by ERO that all efforts have been exhausted to remove the Petitioner to Cuba."  [doc. # 9, p. 7 (internal citations omitted)].

Petitioner filed this proceeding on February 23, 2026.  Citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), Petitioner claims that he is entitled to habeas corpus relief because his removal to Cuba is not reasonably foreseeable.  [doc. # 1, pp. 7, 10-12].  He states that he "has not been given any document evincing a third country's formal acceptance of receiving him."  *Id.* at 2, 6. He states further: "Respondents have not initiated any formal process to remove Petitioner to a third country; or at least, no formal documentation regarding a third country acceptance has been provided.  Any attempts to remove Petitioner to a third country amounted to being taken to the border and to try [to] force Petitioner across the border into Mexico."  *Id.* at 11-12.

Respondents opposed the petition on May 15, 2026.  [doc. # 9].  Petitioner filed a reply on May 22, 2026.

## Law and Analysis

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . .  or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

3

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491.  After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3]  "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701.  If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

 "[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Respondents argue that Petitioner's actions impeding his removal "effectively tolled his removal period."  [doc. # 9, p. 14].  In *Balogun v. I.N.S.*, 9 F.3d 347, 351 (5th Cir. 1993), the Fifth Circuit held "that if it is shown that petitioner by his conduct has intentionally prevented the INS from effecting his deportation, the six-month period should be equitably tolled

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

until petitioner begins to cooperate with the INS in effecting his deportation or his obstruction no longer prevents the INS from bringing that about."

Here, however, Petitioner has been in custody beyond the presumptively reasonable six-month period.  He was already detained beyond the presumptively reasonable six-month period before he impeded removal efforts.  The immigration judge ordered him removed on June 1, 2017.  Under 8 U.S.C. § 1101(47)(B), an order of removal "shall become final upon the earlier of--(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals."[4]  An alien ordered removed has thirty days to appeal that decision to the Board of Immigration Appeals. 8 C.F.R. § 1003.38(b).  Here, Petitioner did not file an appeal with the Board of Immigration Appeals.  Thus, his order of removal became final thirty days after he was ordered removed, or on July 1, 2017.  Petitioner was detained when he was ordered removed.  From the date of his final order of removal on July 1, 2017, to when DHS released him on September 1, 2017, 62 days elapsed.  Then from when DHS re-detained Petitioner on July 24, 2025, to when Petitioner first impeded his removal on December 17, 2025, 146 days elapsed.  In total, Petitioner was detained over six months after his final order of removal and before he impeded removal.

Respondents next argue that Petitioner fails to meet his burden of proving that "there is a good reason to believe removal is not likely in the reasonably foreseeable future."  [doc. # 9, p. 9].  Respondents present the May 15, 2026 declaration of William S. Shaw, an Assistant Field Office Director, who declares in part:

---

[4] *See also Riley v. Bondi*, 606 U.S. 259, 267 (2025).

13. On or about November 24, 2025, the Petitioner claimed fear to be removed to Mexico. An asylum interview was conducted on December 2, 2025 where the Petitioner received a negative finding of credible fear of being removed to Mexico.

14. On or about December 17, 2025, the Petitioner failed to comply with his removal to Cuba by refusing to board the bus. ERO read the Petitioner his rights under Form I-229 (Warning for Failure to Depart) and the Petitioner continued to refuse compliance.

15. On or about March 23, 2026, Petitioner again failed to comply with ERO for his removal flight to Cuba.

16. On or about March 30, 2026, Petitioner again failed to comply with ERO for his removal flight to Cuba.

17. On or about April 2, 2026, ERO Headquarters was advised that all efforts have been exhausted to remove the Petitioner.

18. On or about April 6, 2026, Petitioner was removed from the Flight Manifest #7426864 pending repatriation to Cuba inquiry.

19. On or about April 10, 2026, Petitioner was served a Notice of Failure to Comply pursuant to 8 CFR 241.4(g) in person at the Torrance County Detention Facility. Petitioner refused to sign the document and stated he refused to be removed to Mexico. A copy of the document was uploaded.

. . . .

25. On or about May 4, 2026, Albuquerque ERO was informed by the Cuban government that the subject was denied for repatriation by the Government of Cuba.

26. On or about May 6, 2026, ERO reached out to Office of the Principal Legal Advisor requesting guidance on next steps regarding Petitioner's removal. A response is still pending.

[doc. # 9-1, pp. 1-2].

Petitioner does not dispute Director Shaw's declarations. He has not cooperated in efforts to remove him. As above, on approximately December 17, 2025, Petitioner refused to board a bus, thwarting efforts to remove him to Cuba. [doc. # 9-1, p. 2]. On March 23 and 30, 2026, "Petitioner again failed to comply with ERO for his removal flight to Cuba." *Id.* "On or

6

about April 10, 2026, Petitioner was served a Notice of Failure to Comply pursuant to 8 CFR

241.4(g) in person at the Torrance County Detention Facility.  Petitioner refused to sign the

document and stated he refused to be removed to Mexico."  *Id.*  As Respondents state,

"Petitioner has thwarted his removal by refusing to assist [] in his removal to both Mexico and

Cuba."  [doc. # 9, p. 14].

Petitioner, not ICE, prolonged his detention and diminished his likelihood of removal (at

that time) by overtly thwarting his removal.  *See Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir.

2003) ("[T]he detainee cannot convincingly argue that there is no significant likelihood of

removal in the reasonably foreseeable future if the detainee controls the clock.") (cited with

approval by *Hook v. Lynch*, 639 F. App'x 229, 230 (5th Cir. 2016) (denying a petition where the

petitioner failed to cooperate with efforts to remove him)).[5]

There is no indication that Petitioner is now cooperating or intends to cooperate.

Petitioner therefore fails to establish that there is no significant likelihood of removal in the

reasonably foreseeable future.  *See Gonzalez v. Gills*, 2022 WL 1056099, at *1 (5th Cir. Apr. 8,

2022) (opining, where the petitioner impeded his removal, that the district court did not err in

determining that the petitioner failed to show that there was no significant likelihood of his

removal in the reasonably foreseeable future if he cooperated).[6]  The Government is actively

---

[5] *See also Lusanga v. Ramos*, 2019 WL 2851759, at *2 (W.D. La. 2019) ("An alien is not entitled to relief for a delay that he himself has intentionally caused by deliberately obstructing his otherwise imminent deportation; it would be inequitable to allow him to benefit from that delay.").

[6] *See also Oladokun v. U.S. Atty. Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("In contrast to the petitioner in *Zadvydas,* who could not be removed because the receiving countries refused to accept him, Oladokun's non-cooperation is the only barrier to his removal.  The Department could have removed Oladokun to Nigeria, but for his misconduct at the airport."); *Linares v. Dep't of Homeland Sec.*, 598 F. App'x 885 (11th Cir. 2015) (reasoning, where the detainee refused to board a plane, that the petitioner could not meet his burden and that there was a

attempting to remove Petitioner, and Petitioner provides no indication that it will not succeed if he begins cooperating.[7]

Accordingly, Petitioner's detention remains reasonable. He may re-file his claim if he develops good reason to believe, in light of any changes in circumstance or new evidence— beginning with his full cooperation with efforts to remove him—that his removal is not significantly likely in the reasonably foreseeable future. *See, e.g., Adefemi v. Gonzales*, 228 F. App'x 415, 416-17 (5th Cir. 2007).[8]

---

significant likelihood that he would be removed "as soon as he cease[d] obstructing the government's efforts to remove him."); *Iwuoha v. Viator*, 2014 WL 4678860, at *3 (W.D. La. Sept. 19, 2014) ("[I]t is clear that Nigeria is willing to accept Petitioner—travel documents for Petitioner had already been issued and Petitioner was in the process of boarding the airplane bound for Nigeria when his own intentional criminal conduct intervened."); *Sam-Kabba v. Napolitano*, 2013 WL 5960670, at *1 (W.D. La. Nov. 6, 2013).

[7] The Cuban government "denied" repatriation. Under 8 U.S.C.A. § 1231(b)(2)(E), "If an alien is not removed to a country under the previous subparagraphs of this paragraph, the Attorney General shall remove the alien to any of the following countries: (i) The country from which the alien was admitted to the United States. (ii) The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States. (iii) A country in which the alien resided before the alien entered the country from which the alien entered the United States. (iv) The country in which the alien was born. (v) The country that had sovereignty over the alien's birthplace when the alien was born. (vi) The country in which the alien's birthplace is located when the alien is ordered removed. (vii) If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country."

[8] Of note, Under 8 U.S.C. § 1231(a)(1)(C), "The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." Applying Section 1231(a)(1), the Fifth Circuit Court of Appeals reasoned in two unpublished opinions that when a detainee fails to cooperate with efforts to remove him, the "removal period" under Section 1231(a)(1)(A), is effectively tolled. *Hook*, 639 F. App'x at 230 (unpub.); *Gonzalez v. Gills*, 2022 WL 1056099, at *1 (5th Cir. Apr. 8, 2022) (unpub.). Here, the undersigned need not determine if Petitioner's actions tolled the statutory removal period in Section 1231(a)(1)(A), because, regardless, he is not entitled to relief under *Zadvydas*. That said, it is worth noting that Section 1231(a)(1)(C), "evidences Congress' intent to permit continued

**Conclusion**

For the reasons above, **IT IS RECOMMENDED** that Petitioner Jesus Guillen's petition be **DISMISSED WITHOUT PREJUDICE** to Petitioner's right to re-file his claim of prolonged detention if he has good reason to believe, in light of any changes in circumstance or new evidence, that his removal is not significantly likely in the reasonably foreseeable future.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 27th day of May, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge

---

detention when an alien refuses to cooperate and attempts to thwart the INS' efforts to deport him." *Lema v. I.N.S.,* 214 F. Supp. 2d 1116 (W.D. Wash. 2002). Otherwise stated, Congress plainly declined to fault the government for failing to remove a detainee by a deadline when the detainee fails to cooperate in effecting his removal.